# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ROGER HARVEY WAGNER | § | |
| | § | |
| vs. | § | CIVIL NO. 4:17CV278 |
| | § | CRIMINAL NO. 4:15CR175(1) |
| UNITED STATES OF AMERICA | § | |

## MEMORANDUM OPINION AND ORDER

The following are pending before the Court:

1. Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. #1); and

2. Government's consolidated response to Petitioner's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. #4)

Having considered the Petitioner's motion and the Government's response thereto the Court finds that the motion should be denied.

## BACKGROUND

The procedural history and factual background are uncontested. Therefore, the Court adopts the Government's summary of the background of this case as follows:[1]

> From on or about February 1, 2010, and continuing through November 30, 2010, the **Wagners**[2] controlled an entity called GID Group, Inc. (GID). (Dkt. #55 and #60 at pp. 1-2). The **Wagners** represented to potential investors that GID was in the business of foreign currency trading. They knowingly made false and material representations to potential investors, specifically: 1) that investor money would be

---

[1] As noted in the Government's response, "Docket sheet for case number 4:15CR175 (1 and 2) is referred to by 'Dkt. #___.' The Presentence Investigation Report is referred to as 'PSR at p. ___'. The Sentencing Hearing is referred to as 'SH at p. ___'." The PSR for the Petitioner herein is docket entry number 88 in the criminal matter.

[2] The "Wagners" refers to the Defendants in the criminal matter, twin brothers Roger Harvey Wagner and Rodney Lee Wagner.

1

used to conduct foreign currency trading, 2) the investor would be repaid their principal along with a fixed amount of profit, 3) the return on the investment would be paid to the investor at a fixed rate over a number of weeks. (Dkt. #55 and #60 at p.1-2) The **Wagners** did not use their investors' money to conduct foreign currency trading. The **Wagners** instead used investors' money to repay previous investors for their previous investments, and to lull the previous investors into thinking that GID was conducting legitimate operations. (Dkt. #55 and #60 at p.2). As with most Ponzi schemes, those investors who were fortunate enough to invest early in the scheme saw the return of their principle, and even saw profits. Eventually, the supply of investors dwindled and the scheme crumbled. (PSR at p. 8-9) Promised payouts were missed, and at the end were simply never made. Overall, 121 investors sustained losses to their investments. During the period the scheme employed by the **Wagners** was in operation, investors made $5,961,912.15 in investments in GID. The total dollar loss on unprofitable contracts amounted to $2,789,00.32. (PSR at 8-9).

On September 10, 2015, the grand jury returned a four count indictment against **Wagners** which charged in Count 1 that the **Wagners** committed the offense of conspiracy to commit wire fraud, in violation of 18 U.S.C. Section 1349. Counts 2 through 4 charge the **Wagners** with substantive violations of wire fraud, violations of 18 U.S.C. Section 1343, for three separate interstate wire transmissions that had been caused by the defendants in execution of the scheme. (PSR at 3). On April 14, 2016 the grand jury returned a superseding indictment that did not change the offenses or their alleged dates, but that added language alleging the **Wagners** also committed their criminal conduct through the use of other persons.(Dkt. #24).[3] On July 27, 2017, the **Wagners** appeared and pled guilty to a one count information that alleged the same conspiracy to commit wire fraud that was alleged in the superseding indictment, but that was charged as a violation of 18 U.S.C. Section 371, rather than a violation of 18 U.S.C. Section 1349. (Dkt. # 48-50) The defendant's plea was entered pursuant to a written plea agreement that contained the following non-binding stipulations regarding the United States Sentencing Guidelines:

    a.    Pursuant to USSG 2B1.1(a)(2) the base offense level was 6.

    b.    The intended loss was $2,789,000.32, which provided for a 16 level increase pursuant to USSG 2B1.1(b)(1)(I).

    c.    The offense involved more than 50 victims but less than 250 victims resulting in a 4 level increase pursuant to USSG 2B1.1(b)(2)(B).

    d.    The offense involved a violation of commodities law and the

---

[3]On May 4, 2016, the grand jury returned a second superseding indictment.

>   > defendant was operating a commodities pool, and this resulted in an increase of 4 levels pursuant to USSG 2B1.1(b)(19)(B), (Dkt. #53 and #58 at p.3)
>
>   e.  The defendant accepted responsibility for the offense conduct and was entitled to a 3 level decrease in the total offense level pursuant to USSG 3E1.1. (PSR at 10).
>
> The plea agreement for each of the **Wagners** also contained a paragraph that provided as follows: "**WAIVER OF RIGHT TO APPEAL OR OTHERWISE CHALLENGE SENTENCE**: Except as otherwise provided in this paragraph, the defendant waives the right to appeal the conviction, sentence, fine, order of restitution, or order of forfeiture in this case on all grounds. The defendant further agrees not to contest the conviction, sentence, fine, order of restitution, or order of forfeiture in any post-conviction proceeding, including, but not limited to, a proceeding under 28 U.S.C. § 2255. The defendant, however, reserves the right to appeal any punishment imposed in excess of the statutory maximum. The defendant also reserves the right to appeal or seek collateral review of a claim of ineffective assistance of counsel." (Dkt. #53 and #58 at pp.6-7).
>
> The PSR adopted the stipulations of the parties regarding the Sentencing Guideline levels, which resulted in a total adjusted offense level of 25 which, with a Criminal History Category of 1, resulted in a sentencing range of 57 to 60 months. (PSR at 23). Prior to Sentencing, the defendants filed a motion for Downward Departure/Variance, asking the Court to sentence the defendants to probation. (Dkt. #83). At the sentencing hearing the Court, without objection, adopted the findings of the PSR. (SH at 4-5). The **Wagners** presented the testimony of several character witnesses. The **Wagners'** attorneys also presented the testimony of James Fullbright, who testified that he had invested $10,000 with the defendants as a result of the scheme, and that he had only been repaid about $7,000 to $8,000. (SH at p. 25-26 and at p. 28). Defense counsel elicited testimony from James Fullbright that the witness would prefer to see the **Wagners** get a sentence of probation so that they would have the opportunity to pay him back the balance of what he had invested. (SH at p. 26). Counsel for the **Wagners** addressed the Court and requested probation for the **Wagners**, and the **Wagners** were each allowed to address the Court. The Court granted the **Wagners'** Motion for a Variance from the United States Sentencing Guidelines and sentenced the defendants to 48 months imprisonment, restitution of $1,895,318.62, supervised release term of 3 years, and a $100 special assessment. The Court waived a fine. (Dkt. #90). The **Wagners** did not file a direct appeal. They filed the pending motion on April 21, 2017.

GOV. RESPONSE, (Dkt. #4), pp. 1-5.

3

In his § 2255 motion, the Petitioner claims that he is entitled to relief on two grounds. First, the Petitioner contends that the judgment violates the Constitution or laws of the United States. The Petitioner argues that the Government should have sought probation rather than incarceration so that the Petitioner could have the opportunity to make his victims financially whole. Second, the Petitioner contends that he received the ineffective assistance of counsel. The Petitioner argues that his counsel failed to accurately portray the Petitioner to the Court at the sentencing hearing because counsel failed to present an accurate depiction of the Petitioner's intentions with respect to the offense to which he entered a plea of guilty. Had counsel accurately portrayed the Petitioner to the Court, the Petitioner suggests that the Court would have imposed probation rather than incarceration.

### **STANDARD FOR FEDERAL HABEAS CORPUS PROCEEDINGS**

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). A movant in a § 2255 proceeding may not bring a broad-based attack challenging the legality of the conviction. The range of claims that may be raised in a § 2255 proceeding is narrow. A "distinction must be drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297, 1300-1301 (5th Cir. 1992) (*citations omitted*). A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). Conclusory allegations, which are unsupported and unsupportable by anything else contained in the record, do not raise a constitutional issue in a habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

## DISCUSSION AND ANALYSIS

A. **Claim One (Sentence Imposed in Violation of the Constitution or Laws of the United States)**

In the his first ground for relief, the Petitioner argues that the Government failed to request probation. The Petitioner's claim for relief, however, is barred by the waiver provision in his plea agreement.

> "A criminal defendant may waive his statutory right to appeal in a valid plea agreement." *United States v. Pleitez*, 876 F.3d 150, 156 (5th Cir. 2017). When deciding "whether an appeal of a sentence is barred by an appeal waiver provision in a plea agreement, we conduct a two-step inquiry: (1) whether the waiver was knowing and voluntary and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the agreement." *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005).
>
> For a waiver to be knowing and voluntary, "[a] defendant must know that he had a 'right to appeal his sentence and that he was giving up that right.'" Moreover, "[a] waiver is both knowing and voluntary if the defendant indicates that he read and understood the agreement and the agreement contains an 'explicit, unambiguous waiver of appeal.'" But, as acknowledged in the plea agreement, "a defendant may always avoid a waiver on the limited grounds that the waiver of appeal itself was tainted by [IAC]."
>
> "We apply normal principles of contract interpretation when construing plea agreements." When determining "whether an appeal waiver applies to the issues presented, this [c]ourt 'ascertain[s] the ordinary meaning of the waiver provision,'" and "construe[s] appeal waivers narrowly ... against the government,". Nonetheless, "[t]he government has a strong and legitimate interest in both the finality of convictions and in the enforcement of plea bargains."

*United States v. Kelly*, 915 F.3d 344, 348–49 (5th Cir. 2019) (internal citations and footnotes omitted).

Here, the Petitioner did not argue that his waiver was not knowing or voluntary. In fact, the record demonstrates that the Petitioner's waiver was both knowing and voluntary. The plea agreement clearly states that the Petitioner understood the nature and elements of the crime to which

he admitted guilt. (Dkt. #53, pp. 1-2). Additionally, the plea agreement provides that "[t]his plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises other than those set forth in this agreement." *Id*. at p. 6. Finally, the Petitioner signed the plea agreement, stating that "I have read or had read to me this plea agreement and have carefully reviewed every part of it with my attorney. I fully understand it and voluntarily agree to it." *Id*. at p. 8. The Petitioner's waiver, therefore, was both knowing and voluntary because the Petitioner indicated that he read and understood the plea agreement and the plea agreement contained an "explicit, unambiguous waiver of appeal." *See Kelly, supra*. The waiver, then, therefore, applies to all of the Petitioner's claims, except those concerning any punishment imposed in excess of the statutory maximum or the ineffective assistance of counsel. *See id*. As such, the Petitioner may not pursue his claim that his sentence was imposed in violation of the Constitution and laws of the United States since it is barred by the clear terms of the appeal waiver. *See id*. However, the Petitioner's ineffective assistance of counsel claim is not barred. *See id*.

        **B.**        **Claim Two (Ineffective Assistance of Counsel)**

The Petitioner claims that he received the ineffective assistance of counsel because counsel failed to secure a sentence of probation. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction requires the defendant to show the performance was deficient and the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id*. at 700. A movant who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James v. Cain*,

56 F.3d 662, 667 (5th Cir. 1995). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonably professional judgment. *Strickland*, 466 U.S. at 690. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).

A movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Movant must "affirmatively prove," not just allege, prejudice. *Id*. at 693. If he fails to prove the prejudice component, a court need not address the question of counsel's performance. *Id*. at 697. "In the context of a guilty plea, that means there is a reasonable probability that the defendant 'would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Valdez*, 18-40495, 2020 WL 5201234, at *4 (5th Cir. Sept. 1, 2020), citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see also Young v. Spinner*, 873 F.3d 282, 285 (5th Cir. 2017).

Where, as here, a defendant pleads guilty, the focus of attention is the guilty plea and "whether the plea represents a voluntary and intelligent choice among alternative courses of action open to a defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). When a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). A defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not

7

within the standards set forth in *McMann*." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Hill*, 474 U.S. at 56-57.

In evaluating the Petitioner's claim, the Court first addresses the second prong of the *Strickland* test. The Petitioner herein does not mention that to prove the prejudice prong of the *Stickland* test, he must establish that there was a reasonable probability that but for his counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on going to trial. *See Valdez, supra*. Perhaps this is because Petitioner's counsel's request for a variance was successful to a degree. Counsel sought probation rather than incarceration. Counsel presented evidence that certain victims preferred probation over incarceration so that the Petitioner could pay back the victims of his fraudulent scheme. Although Petitioner's counsel did not convince the Court to impose a sentence of probation, counsel's request for a variance was granted in part. The Court ultimately sentenced the Petitioner to 48 months imprisonment, 12 months below the 60 month recommended sentence. During the sentencing hearing, the Court informed the Petitioner that one of the reasons it would not consider probation is because even though the Petitioner knew that he could not meet his financial obligations to his investors, he continued to solicit money from those investors. (Dkt. #106, p. 38). Given that the Petitioner wholly failed to present any argument or evidence that there was a reasonable probability that but for his counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on going to trial, the Petitioner's ineffective assistance of counsel claim fails.

## **CONCLUSION**

Based on the foregoing, the motion for relief pursuant to 28 U.S.C. § 2255 is denied and the case is dismissed with prejudice.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although the Petitioner has not yet filed a notice of appeal, the Court, nonetheless, addresses whether the Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a [movant] relief is in the best position to determine whether the [movant] has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the movant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a [certificate of appealability] should issue when the movant shows, at least, that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists could not debate the denial of the Petitioner's § 2255 motion

on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Petitioner is not entitled to a certificate of appealability.

It is therefore **ORDERED** that the motion to vacate, set aside, or correct sentence is **DENIED**, and the case is **DISMISSED** with prejudice. A certificate of appealability is **DENIED**. All motions not previously ruled on are **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 28th day of September, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE